IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **REDACTED** |
| | ) | |
| v. | ) | Docket No. 1:14-cr-35 |
| | ) | The Hon. Anthony J. Trenga |
| ROBERT S. MARTIN, | ) | Sentencing: May 2, 2014 |
| | ) | |
| formerly named Robert S. Kanli, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S POSITION WITH REGARD TO SENTENCING

Pursuant to Rule 32 of the Federal Rules of Criminal Procedure, § 6A1.3 of the advisory United States Sentencing Guidelines, and this Court's Policy Regarding Procedures to be Followed in Sentencing, the defendant, Mr. Robert S. Martin, through counsel, states that he has received and reviewed the Presentence Investigation Report ("PSR") prepared in this case and that he has no objections to the advisory guideline range contained therein.

### INTRODUCTION

Mr. Martin pleaded guilty to the offense of making threats over email in violation of 18 U.S.C. § 875(c). He is 33 years old, college-educated, and resided in Kosovo at the time of the offense. Over the course of four days in September 2013, Mr. Martin sent approximately 100 emails, many in rapid succession, to a general email address maintained by the U.S. Consular office in Kosovo. The emails had no text, but the subject lines of the emails, attached as exhibit 1 to this Position, were occasionally threatening (i.e., "I buy silencer and shoot you dead"), sometimes macabre (i.e., "Dear Embassy Staff: I eat your brains with spices"), and often bizarre (i.e., "I'm getting Bs Instead of As this Semester"). ████████████████

███, and for this reason the PSR has suggested that a downward departure may be warranted pursuant to § 5K2.13 of the sentencing guidelines. PSR ¶ 87.

Such a departure would be appropriate in this case.  It is also clear that Mr. Martin made no effort and had no intention of carrying out any of the threats he sent to the general consular email address.

Mr. Martin has been in custody, either in the hands of Kosovo authorities or those of the United States, since September 18, 2013. Given the relationship between Mr. Martin's illness and the crime, the absence of any evidence that Mr. Martin took steps to carry out any violent act, and in accordance with the sentences imposed in similar cases, a sentence of time-served followed by a two-year period of supervised release would be sufficient punishment in this case.

## BACKGROUND

While the Court must consider the advisory sentencing guideline range, the Sentencing Reform Act, 18 U.S.C. § 3551, contains an "overarching provision" that district courts must impose sentences "sufficient but not greater than necessary" to accomplish the sentencing goals set forth in 18 U.S.C. § 3553(a)(2). *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). These statutory sentencing goals include retribution (to reflect the seriousness of the offense, to promote respect for the law, and to provide "just punishment"), deterrence and incapacitation ("to protect the public from further crimes"), and rehabilitation ("to provide the defendant with needed

educational or vocational training, medical care, or other correctional treatment in the most effective manner").

In designing a sentence designed to meet those goals, however, the Court must "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Gall v. United States*, 522 U.S. 38, 52 (2007) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)). Accordingly, section 3553 directs courts to consider: (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) the kinds of sentences available, (c) the guideline range, (d) the need to avoid unwarranted sentencing disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3553(a).

## ARGUMENT

**I.  The Court Should Depart Downward or Impose a Variant Sentence Because Mr. Martin's Mental Illness Contributed Substantially to the Commission of the Offense**

**A.  The Direct Relationship Between Mr. Martin's Mental Illness and the Offense Warrants a Downward Departure or Variant Sentence**

Section 5K2.13 of the Sentencing Guidelines provides, in relevant part, as follows:

> A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. Similarly, if a departure is warranted under this policy statement,

> the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.[1]

In determining whether to depart based on diminished capacity under U.S.S.G. § 5K2.13, "significantly reduced mental capacity" means that the defendant, "although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." U.S.S.G. § 5K2.13, app. n.1. The Fourth Circuit has explained that in order to be eligible for a departure under this section, the defendant's condition must "'impair[] the formation of reasoned judgments,' . . . or prevent[] him from processing information when he committed the offenses." *United States v. Goossens*, 84 F.3d 697, 701 (4th Cir. 1996) (quoting *United States v. Cantu*, 12 F.3d 1506, 1513 (9th Cir. 1993), and citing *United States v. Johnson*, 979 F.2d 396, 401 (6th Cir. 1992)). Moreover, the defendant must demonstrate that his condition "bears a causal relationship to the crime." *United States v. Withers*, 100 F.3d 1142, 1148 (4th Cir. 1996). "Diminished capacity need not be the sole cause of the offense to justify a departure, but should 'comprise a contributing factor in the commission of the offense.'" *United States v. Glick*, 946 F.2d 335, 339 (4th Cir. 1991) (quoting *United States v. Ruklick*, 919 F.2d 95, 97-98

---

[1] Section 5K2.13 further provides the following restrictions on a diminished-capacity departure, none of which is relevant here:

> However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public; or (4) the defendant has been convicted of an offense under chapter 71, 109A, 110, or 117, of title 18, United States Code.

(8th Cir. 1990)). Regarding the extent of a departure, § 5K2.13 provides that "[i]f a departure is warranted, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense."

The bizarre nature of the underlying offense speaks to the direct connection between Mr. Martin's mental illness and the commission of the crime. ████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████.

████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████

As such, there is a substantial evidentiary basis for the conclusion that Mr. Martin "committed the offense while suffering from a significantly reduced mental capacity," and "the significantly reduced mental capacity contributed substantially to the commission of the offense." We respectfully request that the Court take this into account when imposing a sentence in this case.

B. **Defendant's History and Characteristics Demonstrate that Mr. Martin Needs Treatment More than Incarceration**

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████ Mr. Martin withdrew from his high school in the 10th grade, and subsequently obtained a GED while working full time.

Mr. Martin thereafter attended college and obtained a Bachelor of Arts from Trinity Lutheran College in 2005. Mr. Martin also studied German and became conversant in the language. He also reports that he obtained a teaching certificate following the completion of an on-line course offered by Western Governors University, which he subsequently used to obtain employment as an English teacher in Europe. He presents as an intelligent young man who recognizes that he never should have sent the emails that he sent.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████ Mr. Martin also has a conviction for possessing fraudulent credit cards that were found on his person when he attempted to enter Canada in 2010. PSR ¶ 39. For that offense Mr. Martin was sentenced to 30 days of incarceration and a $128 fine.█

████████████████████████████████████████████████████████████

████████████████████████████████

6

Nonetheless, Mr. Martin does not appear currently to demonstrate manic, hypomanic, or depressive symptoms. ██████████████████████████

██████████████████████████

██████████████████████████

██████████████████████████

██████████████████████████

████████████████████

████████████

In other words, Mr. Martin's illness can be successfully addressed with medication and proper mental health treatment. In the absence of such treatment, no amount of incarceration will serve any deterrent purpose because Mr. Martin's rational decision-making can be impaired by his mental illness.

## II. Sentences Imposed in Analogous Cases Support A Sentence of Time-Served Followed by a Period of Supervised Release

This Court has had occasion to impose sentences in a number of cases that involve similar factual circumstances. In particular, the Court imposed a sentence of time-served and three years of supervised release in the case of *United States v. Donald E. Jones*, 1:14-CR-12 (AJT). Mr. Jones pleaded guilty to violating 18 U.S.C. § 875(c) based upon a series of threatening emails sent to a variety of DEA agents over a prolonged period of time. After an initial finding that Mr. Jones was incompetent, Mr. Jones was restored to competency, entered a guilty plea on January 30, 2014, and received a sentence of time-served.

In *United States v. Corey A. Turner*, 1:14-cr-58 (GBL), the defendant pleaded guilty to violating § 875(c) based upon the communication of a threat over the telephone to an official at the Pentagon. In that case, the government agreed in the plea agreement to a downward departure pursuant to § 5K2.13 because the defendant, like Mr. Martin, suffered from Bipolar Disorder I at the time of the offense. Accepting the parties' joint recommendation, the Court sentenced Mr. Turner immediately following the plea to one year of probation.

In the case of *United States v. Awais Younis*, 1:11-CR-007 (TSE), the defendant pleaded guilty to violating § 875(c) based upon threatening statements he made to a woman through the social media site Facebook. Following the entry of the plea, the Court sentenced Mr. Younis to time-served followed by two years of supervised release.

Finally, in *United States v. Grant Dalton*, 1:14-CR-57 (TSE), the defendant was initially charged with violating § 875(c) based upon a threatening phone call made to the Pentagon. Mr. Dalton was subsequently found incompetent. He subsequently was restored to competency, pleaded guilty to an assimilated offense, Va. Code § 18.2-427, that prohibits threats communicated by telephone, and was sentenced two weeks after the plea hearing to time-served followed by one year of supervised release.

**III.   Uncharged and Uncorroborated Conduct Should Not be Considered by the Court**

As noted in the Addendum, the PSR contains a number of factual allegations that Mr. Martin denies, most notably with respect to fake credit cards and records of financial transactions allegedly found in Mr. Martin's residence (which he shared with another person) in Kosovo. None of these alleged facts relate to the advisory guideline range or have a connection with the offense of conviction. As such, the Court need not address these matters in imposing its

8

sentence. See Fed. R. Crim. P. 32(i)(3)(B) (authorizing courts to "determine that a ruling [as to a disputed portion of the PSR] is unnecessary either because the matter will not affect sentencing, or because the court will not consider the mater in sentencing."). Accordingly, we respectfully request that the Court decline to consider such "wholly different conduct, and conduct never investigated, charged or remotely corroborated to boot." *United States v. Astronomo*, 183 F. Supp. 2d 158, 193 (D. Mass. 2001)**.**

The Fourth Circuit has explained that a basic premise of sentencing defendants based upon the offense of conviction and relevant conduct "is for the sentence to reflect accurately the seriousness of the crime charged, but not to impose a penalty for the charged crime based on unrelated criminal activity." *United States v. Mullins*, 971 F.2d 1138, 1145 (4th Cir. 1992) (quoting *United States v. Wood*, 924 F.2d 399, 404 (1st Cir. 1991)). For this reason, appellate courts "have refused to allow sentencing courts to use [the concept of relevant conduct] to sweep in uncharged, wholly unrelated criminality that occurred contemporaneously with the charged conduct. *United States v. Nance*, 611 F.3d 409, 416 (7th Cir. 2010); *accord United States v. Allen*, 488 F.3d 1244, 1256 (10th Cir. 2007) ("To the extent that the district court used the uncharged conduct in this case as an offense characteristic, which is not clear, it violated a basic structural norm of the Guidelines system."). Moreover, while the Court retains broad discretion to consider matters that are relevant to its sentencing decision, it necessarily must take care to avoid consideration of information that is uncorroborated or potentially unreliable. *Cf. United States v. Tucker*, 404 U.S. 443, 446 (1972) (noting due process right to sentence based upon accurate information).

To its credit, the government has not suggested in its Position on Sentencing that the allegations regarding the supposedly false credit cards found in the residence in Kosovo constitute an aggravating factor in this case or support a sentence higher than the low end of the advisory range.  Given (1) the uncorroborated nature of this information, (2) the multiple layers of hearsay between the source of this information in Kosovo and the federal courthouse in Alexandria, Virginia, and (3) the absence of any connection between these allegations and the charged offense, we ask the Court to disregard this information in its sentencing calculus.

## **CONCLUSION**

For the foregoing reasons, we respectfully request that the Court impose a sentence of time-served followed by a two-year period of supervised release.

Respectfully submitted,
Robert S. Martin

By counsel,
Michael S. Nachmanoff
Federal Public Defender

　　　　　　/s/
_____
Geremy C. Kamens
Counsel for the Defendant
First Assistant Federal Public Defender
Va. Bar. No. 41596
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, VA 22314
Phone: (703) 600-0800
E-mail: geremy_kamens@fd.org

**CERTIFICATE OF SERVICE**

       I hereby certify that on April 25, 2014, an electronic copy of this under seal filing was sent by email to the following:

Ron Walutes
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Ave.
Alexandria, VA 22314-5794

                                               _____/s/_____
                                               Geremy C. Kamens
                                               Counsel for the Defendant
                                               Office of the Federal Public Defender
                                               1650 King Street, Suite 500
                                               Alexandria, VA 22314
                                               Phone: (703) 600-0800
                                               E-mail: geremy_kamens@fd.org